The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in No. 10-2347, Liberty University v. Lew. Good morning, Your Honors. Good morning. May it please the Court, on behalf of the plaintiff's appellants, I respectfully request that this Court reverse the District Court and grant adjunctive relief for two reasons. First of all, the mandates violate statutory and constitutional rights with regards to free exercise of religion, and secondly, Congress lacks authority under the employer mandate to pass that mandate. But first, before getting to the merits of the case, I'd like to address what the Administration has raised with regards to jurisdiction and standing in the Anti-Injunction Act. Liberty University clearly has standing, as the District Court has already found below, and there's no reason to revisit those particular findings. Unlike any of the other four non-profit cases that are out there, none of those cases challenge the employer mandate in its entirety. Those cases all deal with the subsequent HHS mandate or the preventative care mandate. But Liberty University challenges the employer mandate in its entirety, and consequently, Liberty will have to either pay a penalty or provide insurance. That's a given. There's no uncertainty and there's no possibility that Liberty can go either way. It pays a penalty for not providing insurance, or it provides insurance and under that provision it has to comply with the essential coverage and the affordability. Liberty clearly has standing to bring this case. Also, as it relates to the preventative care mandate, in the complaint we listed Section 1302, which speaks about the preventative care that's part of the essential coverage. I think that Bookseller's case probably is the best case, in my opinion, in terms of your argument for standing. It seems to fit within your argument here. I just want to get your take on it just a little bit, and it seems like to me if you do agree, then... I do agree. I agree that in the Bookseller's there were some uncertainties, but it was certainly something that was impending. And I think that the fact here, you may have something that's coming down the pipe a little bit later, but it's right around the corner for Liberty University, and Liberty has one or two choices, and really there's neither. Pay a penalty or provide insurance. What's the basis for your concern about 1302? 1302 actually is something that we challenged in paragraph 43 and following in the second amended complaint, and that's the section that talks about the preventative care. It is from that particular provision that the HHS mandate later came, and that also... Doesn't that relate to the exchanges? You're not part of the exchange. We're not part of the exchange, but the... Nor will you ever be. No, but the act itself does provide the basis for what the secretary later did, which was the HHS mandate. As it relates to challenge the employer mandate in its entirety, I think we clearly have standing. As it relates to challenging the preventative care mandate, that is part and parcel of what was authorized under the act, and that's something that certainly Liberty University, when it does make the decision to say, for example, provide insurance, will be confronted with. And Liberty simply cannot provide that preventative care if it includes, as it does here, the abortifacient drugs or the IUDs because of its position on abortion. If you don't have standing or have failed to challenge in the prior appeal the abortifacients, does that change your argument? No, because we... In fact, we didn't use the word abortifacients, but we used the word abortion. Okay, but those are two very different things, arguably. And if one were convinced that they are two different things and that a challenge using the term abortion is not sufficiently broad, how, if at all, does that affect your argument? Well, I think that as it relates to Liberty University and the understanding of an abortifacient, is that's what it does. It terminates... But I'm asking you to assume that a decision maker doesn't agree with plaintiff's interpretation of those words. If Judge Davis, you were not to agree that abortion is surgical and an abortifacient is not covered by the word abortion, then Liberty University still has standing to challenge the employer mandate because it still has to comply or it has to pay a penalty. And so Liberty still has the right to be able to challenge the employer mandate before this court. So consequently, it still has... And we know based on what you already offer that you're going to have to change something or pay something? Yes. In fact, the complaint actually addresses that Liberty, like I said, is unlike any of the other not-for-profit cases because they only challenge the current ones that are out there. And even current for-profit cases only challenge the HHS mandate. Liberty includes that before this court because that was something that subsequently occurred, but Liberty also from the very beginning challenges the entirety of the employer mandate. Well, I guess I'm not understanding your question. You say that you have standing to challenge the employer mandate. You've challenged it from the beginning. It was part of the case that you have... What I guess I was interested in is if the abortifacient regulations are in front of us. Yes, Judge Motz, I believe they are in front of you. I think that this was a subsequent act that happened subsequent to the appeal. What is your best case for that proposition? Well, I think... Because I found a realm of cases that would go flatly against you on all kinds of grounds. You never made the argument to the district court. You never made it to us before. You didn't make it in the Supreme Court briefs. So I'm really interested in what your argument might be. There's a couple of cases in terms of issues that are issues of law, and I believe that this clearly is. And that's Singleton v. Wolf out of the United States Supreme Court. There's this Fourth Circuit case called Kaladi, and there's a subsequent... That was 1996, and there's another Fourth Circuit case, 1994. And basically it says that this court can address an issue that comes up post the filing of the case, as long as it is a legal question. And that's what this is. But I'm... I'm sorry. Go ahead. You could have alternatively requested that we remand the action to the district court so that you could file, if you chose, a supplemental or an amended complaint. But you chose not to do that. We chose not to do that, but... Why wouldn't that be preferable? Well, on the HHS mandate, I don't think there's any dispute with the fact that it is out there. This is a legal question as to whether it violates the free exercise of religion. Well, as far as liberty itself is concerned, these regulations may, as I understand it, are tentative, and we don't know exactly what rule is going to be or whether it's going to apply to you. I'm going to talk to the government about that, and I'm sure she's going to be able to tell me the answers to those questions. So, it just seems like you would be particularly wanting this to go back to the district court and to amend your complaint, and you wouldn't have any of these problems. Well, if it were relating to the HHS mandate alone, that may be one thing, but a challenge to the entirety of the employer mandate is another, and there's no reason to send it back on that issue to the district court. No, no, no. And I was trying to... My question, I was trying to separate the two issues. So, just dealing with the... We've gotten pretty close. We've gone along pretty far in the case, but to the abortifacient challenge that you make, you make a bunch of other challenges. You make a Commerce Clause challenge, and you make a tax challenge, you know, you make a bunch of other challenges. You make other religious challenges, but I'm just focusing on that one. On the HHS mandate? I think this court could do either way. Certainly, I don't think that the court should rule against the HHS challenge or the preventative care if it is inclined to send that back. But as it relates to the rest of the case, it's no need to send it back with regards to the underlying challenge of the employer mandate in its entirety. And in fact, in that particular situation, as it relates to the HHS mandate, though, if I might, this viol... I just want to be... You call it the HHS mandate, and I call it the abortifacient issue. Are we talking about the same thing? We're talking about the same thing. Okay. Yeah. It's the abortifacient issue, and I think it is covered within the complaint with regards to abortion. It's the termination of a life, and liberty has a sincerely held religious belief contrary, whether it's surgical or chemical. And I think it is part and partial of this particular act. It is part of what the act speaks about as preventative care. It's just simply a manifestation. You started out on standing, and I think a threshold issue that has to be dealt with, of course, we dealt with this case before, and we went with the Anti-Injunction Act. The Supreme Court says no, but you read that Supreme Court opinion, it looks like to me it's written right down the line to say exactly what was done here is covered by the Anti-Injunction Act. I want to tell you my inclination is not to play with this Anti-Injunction Act again, but it looks to me like that language is right on his face. I mean, if you look at it in terms of a textual look at it, this is called a tax all along. So how do you get around that application to this case? Yes, Judge Winn. I think that the NFIB case actually is in favor of us that the Anti-Injunction Act doesn't apply for several reasons. First of all, the administration in the supplemental briefing in the first round of litigation actually pointed to 9010, 9010 as a provision that applies the excise tax to Cadillac plans. And in that particular section of the statute, it actually references Chapter 68. The only remedy it specifically allows in the act is to have a subsequent refund civil action, and it specifically references this Chapter 68. The individual mandate, as NFIB pointed out, does not reference Section 68, does not come up under Section 68, comes up under 48. The employer mandate comes under Chapter 43. It doesn't reference Chapter 68, nor does it reference 6665 or 667A, I believe it is. And so therefore, I think the employer mandate is on all fours with NFIB. But even beyond that, the employer mandate is also enforced not just by the IRS, but by the Department of Labor. And the Department of Labor would not have anything to do with the Anti-Injunction Act. Like the individual mandate, the employer mandate is integral to the operation of the overall act. The effective date was delayed, and in addition, it's enforced by the Department of Labor. So I think that we even have a stronger case for the fact that the Anti-Injunction Act doesn't apply. And under the employer mandate section, it uses the word penalty nine times. I think it uses the word tax twice. But NFIB clearly indicates that the terms are not necessarily indicative as it relates to the application of the AIA. And I think by that very... Oh, I think just to the contrary, that the terms were crucial in the AIA analysis. Not crucial for as far as the constitutional analysis. Correct. But I think that... But crucial as far as the AIA analysis. Yes, but I think that the... You don't want to get too far into the AIA, because obviously some members, one, does not understand the AIA. Well, the fact of the matter is, though, that the very face of the act, and the administration ably argued before in its supplemental brief that the AIA doesn't apply. And I think when the act actually applies it in 9010F and doesn't apply it in other places, I think that's pretty good intent that it shouldn't apply here. I'd like to get, if I could, to... But put an opus in that opinion on the use of the word tax. You say this a couple of times, maybe three times in this act, and it is called a tax here. I mean, the very language it looked like to me when they were writing that opinion, I'm not sure they were thinking about this or not, but it just seems everything he was saying seemed to fit what is here. Judge Wynne, I respectfully disagree. In fact, they actually used the word accessible payment nine times in the 4980H. And consequently, I think twice it mentions tax, but once in the context of whether an employee goes out to get a subsidy in the exchange and seeks a tax refund or some kind of cost sharing. But as it relates to the employer, I think it actually clearly mentions it as an accessible penalty. I'd like to address the Religious Freedom Restoration Act, if I might. The 19 of the 26 cases dealing with the for-profits have actually entered a preliminary injunction under the Religious Freedom Restoration Act. And the Geneva College case just came down a few days ago. And in that particular case, it dealt with a not-for-profit case. And that case, although it wasn't a preliminary injunction, it's going to go there right away, it denied the motion to dismiss on the same grounds that the administration has been arguing should not grant a preliminary injunction. And the administration just a few days ago dismissed its notice of appeal in the District of Columbia with regards to the Tyndall House case, thus agreeing to abide by the preliminary injunction. In fact, there are preliminary injunctions now issued from the Sixth, the Seventh, and the Eighth Circuit Courts of Appeals. And Justice Ginsburg in 2624 of NFIB says that if there is a mandate to purchase a product that interferes with the free exercise of religion, it could be unconstitutional. And said it would be unconstitutional if it did interfere with the free exercise of religion. And in this case, Liberty has to pay a penalty if it doesn't provide insurance. If it provides insurance, it has to provide the preventative care mandate. Now, whether third parties choose to access that or not is not relevant. What is relevant is Liberty is the vehicle for that to happen. Liberty would have the same objection if it were required by law to provide pornography on cable TV to its students, even though it was paid for by the cable provider at no cost to Liberty. The fact that they're being accessed to that content that's objectionable to Liberty is the same thing here with the preventative care mandate. The fact that Liberty has to be a vehicle whether it pays or not, and the regulation doesn't give any relief, by the way, to self-insurance. But because Liberty, if it chooses to give insurance, has to provide the preventative care, and that alone is enough to violate its religious free exercise. And again, this all turns on whether preventative care is in the case before us. That's correct, Your Honor. But we believe it is. And I think that the administration has not even come back with an argument with respect to the issue of least restrictive means. We believe under RFRA this court should grant an injunction, but we also believe on the general challenge to the employer mandate. Can I just ask you a follow-up to that question? Yes. Because, you know, after all, we have to decide it. So I know you have a lot of things to say. But I wasn't sure that your argument with respect to that went to—I thought it only went to the abortion—how do you say it? Abortifacient? Abortifacient argument, that you didn't—that you hadn't—the problem that you hadn't made the argument before. I thought you'd made all these religious arguments—other religious arguments before. Is that not true? Aren't they in your complaint? Yes, they are in our complaint. And also for the individuals as well. And the individuals, we know, and we mentioned this in the complaint, the district court actually referenced this, have to go out—if they go out into the exchange, they may find themselves in a situation where abortion is covered. I've got your answer then. In response to my friend Judge Davis just now, you said, if we should find that this is not—there hasn't been this challenge to the health care. So sort of pin those together. Tell me what we're talking about here then. I didn't mean to say that if there hasn't been a challenge, there has been a challenge. We believe that it is sufficiently alleged in the complaint to the act itself as it relates to the employer mandate and to the abortion provisions of the employer mandate or the employer provision that is now manifested under the HHS. As it relates to the— Assuming it was in your complaint, I'm sorry, did you brief it in the opening brief to this court? Yes, we did. Okay. Yes, we did. It's a—the free exercise and RFRA are in the opening— But I'm talking about 1001. 1301, 1302? Yes. It is—I believe it's briefed in there. I know the Religious Freedom Restoration Act and free exercise are briefed in that opening brief as well as in the report. No, I understand the RFRA's brief, but the preventative services, is that part of your brief? Is that part of your challenge? I believe it's mentioned in the brief, yes, in terms of what is required under this particular act, yes, in the original opening brief. I would like to just for a few moments mention— When you come back, would you point to us where it is in that brief? In the opening brief? I don't understand it. When you come back. Okay, I'll do that. We're talking—what we're talking about—I'll give you another minute because I'm taking up your time. The preventative care, the provision that Judge Davis is talking about, can you translate that for me? What does that mean? That means the abortifacients is what you're talking about. Okay. Yeah, it's the same thing. Okay. Boy, it's the hard word. The Congress as it relates to Liberty's challenge to the entirety of the employer mandate lacks authority under the Taxing and Spending Clause because this is punitive. And I think NFIB is important in this particular situation to point us down the right track because in NFIB, they said that the payment for the individual was minimal. Currently it's under $100 versus several thousand dollars for the premium. So it was an easy trade-off financially. But for Liberty, it's not. It's $2,000 per employee if it chooses not to provide insurance, and if it provides insurance and it's not part of the essential coverage and the preventative care slash abortifacient is not part of it, it's $2,000 per employee as well. So like Drexel Furniture, it was not apportioned. Like Drexel, it was not tied to income. And like Drexel, this is enforced by the Department of Labor. So I think for those reasons, the fact that the penalty is excessive and it places an exaction on the employer, that it's not tied to income, in fact, Liberty University is tax-exempt anyway, and that it's enforced by the Department of Labor, takes it outside of a permissible tax. In addition... Your time has expired. I'll give you another two minutes, but you should know I'm going to give the government the same amount of time, so... Thank you. In our brief, I'll just rely on our briefing with regards to the Commerce Clause, and if the Court has any questions when I return, I'll be happy to address those as well, just to save the rest of my time. Thank you. Thank you. May it please the Court, Elisa Klein for the Federal Government. I think it might be helpful if I stepped back and explained the relationship between the different provisions that have been discussed, particularly with respect to the employer. So the challenge in this case, Liberty's challenge, and I'm going to use the U.S. Code cites to be precise, to 4980H. And that has nothing to do with the preventative health care services, and what we call the contraceptive coverage requirement, because I know various litigants use the term abortion, abortifacients, but that's a term of art for federal law purposes, and we're talking about contraceptives. But for present purposes, minimum essential coverage, which is what an employer provides under 4980H to avoid tax liability, is not the same thing as essential health benefits. And is it your understanding that Liberty already satisfies minimum coverage? Yes. At least based on the second amended complaint, which is what we have, and there's nothing contrary in the briefing, they offer health coverage to their full-time employees and the dependents. And it's not the unusual form like dental only, that would be excluded. But otherwise, if you're just looking at 4980H, which is the provision at issue here, minimum essential coverage is defined by cross-reference to Section 5000A. And it includes lots of things, including employer-sponsored coverage, leaving aside dental only or vision plans only. Essential health benefits is really something totally different. That's a regulation of insurance companies that sell policies on the individual and small group market. This is a point that the 11th Circuit actually made, it had a glossary at the beginning of 1250, the court explains two key terms in the act are essential health benefits package and minimum essential coverage, although they sound similar, each has a different meaning, and goes on to explain. So essential health benefits has nothing to do with Liberty University for two reasons. It's not in the individual or small group market, it's a large employer, and it's not an insurance company. And in fact, it's self-insured. So it's really, this case has nothing to do with essential health benefits. So you, it's not just that they haven't raised it, you don't think they can challenge it. Is that right? It's a little bit more complicated than that. When the new regulations come out, which will be this summer, Liberty's plan may be covered by the new regulations, assuming it's not a grandfathered plan and they don't qualify for any exemptions. At that point, if they're aggrieved by the new regulations, they could file a new lawsuit, but it would be a new lawsuit. It's not in this case, it's never been in this case, and it does not implement the provision that is at issue in this case. What about the, we also have individuals making the religious claims, don't we? Yes, they've challenged 5000A. So again, 5000A, the Supreme Court has now established, doesn't even require that an individual get health coverage. They are free if they, for whatever reason, do not want health coverage to make the shared responsibility payment instead. And the district court explained there's no claim that making a payment to the general treasury is a violation of their religious practices. Of course, they've challenged that. They've challenged it, but the district court, essentially applying an Iqbal standard, said there's nothing there. And again, they are also separately confused in assuming that there will be no plans available that exclude abortion, because in fact, plans sold on the exchange, they don't have to cover abortion. Well, does the government plan to make changes to its proposed accommodation of religious comments it has received to the proposed rule? Of course. I mean, the departments are in the process. They've received all the comments, the comment period has closed, and they've committed to issuing the final regulations before August, which is when the enforcement safe harbor expires. Again, this is not, it's nothing to do with 4980H, but this is the separate contraceptive coverage requirement, and at that point, anyone who is covered by the final regulations and is aggrieved would be able to bring a challenge. That's helpful for me, because it's all very clear as mud, but what I really asked was if you can tell us whether there are going to be changes. We have said to the D.C. Circuit, there will be changes from the existing contraceptive coverage regulations that are the subject of the ongoing rulemaking. I'm not able to commit the departments to a particular form of final regulations, but we have said, and again, this is, so just again to lay the landscape, because there really are lots of contraceptive coverage cases out there. This is not one of them, but there are probably 60 of them. The companies, the for-profit companies that don't have the protection of the safe harbor, we've briefed the merits. Those are the decisions that the plaintiffs are referring to in their 20HA letters. In the non-profit cases where there are entities like Liberty University that are covered by the safe harbor and will essentially have the benefit of the new regulations, whether they'll end up liking them or not, but they're being changed. The D.C. Circuit, I believe it's now 22 or 23 district courts have said, we're not adjudicating those challenges now, because there are going to be new regulations coming out this summer. So switching over to the issues that actually are before the court on remand from the Supreme Court, the pre-enforcement challenge to 49ADH is barred by the Anti-Injunction Act, and separately there are, it would be premature anyway, given the uncertainty about whether Liberty University will owe a tax under 49ADH. We do believe that this court was correct in saying 49ADH expressly labels this payment a tax, and that's the end of the analysis for purposes of the Anti-Injunction Act. Well, it labels it something else more times. Well, again, the Supreme Court seemed to be counting the times. Yes, we know of no precedent for counting. Congress can use different terms interchangeably, and to some extent there are different variables like applicable payment amount and assessable payment amount, and they all come together. The one thing Congress made completely clear in section 49ADHC7 is it's all a tax. That's why Congress specified that this tax is non-deductible and there are various cross-references. We did argue to the Supreme Court, the employer provision, of course, is labeled a tax and therefore it is a tax. The Supreme Court had no occasion to explicitly address that. It wasn't before the court. But just to make clear, we have said that the label, that's it. That's dispositive. You're trying to get a little consistency into the government's argument, right? We are now. Yes, exactly. Well, I think you need a little consistency. Just to underscore that, the other point is the Anti-Injunction Act bar would apply even if you had certainty that Liberty or another employer owed the tax. It's a distinct bar. You pay and then sue for a refund. But as we also argued in our Supreme Court brief, even, say, for 5,000A, if you don't have an AIA bar, an Anti-Injunction Act bar, you still would look to the normal inquiry about timing. Is it appropriate to adjudicate a pre-enforcement challenge to this payment? And both for Liberty's challenge and the challenge that the two individuals have brought to 5,000A, it's premature for the reasons that we've discussed in our brief. Do the individuals get the benefit of this regulation that you're going to come up with? They're not subject to the preventative services requirement at all. Can they go out and buy some sort of... Are they obligated to purchase insurance that has the option of having these, whatever we Abortion. Contraceptives. Well, again, to go back to what NFIB held, because this was dispositive in NFIB, they're not obligated to get insurance at all. If, as the Sixth Circuit explained, they're more comfortable making the shared responsibility payment, that is an entirely lawful option. Okay, so they don't get any benefit from the regs that are coming out, because that deals with employers, right? But according to you, they don't have to take this course in any event. Exactly. And it's also, at this point, speculative whether they have to do anything under 5,000A, because there are various exemptions in the statute based on financial hardship. And they allege in the complaint, it would be a financial hardship. One of the two says she's unemployed. I assume this is still true, because we have not gotten any other information. The other provides no information. And so it may be that they don't even have to make the shared responsibility payment. So we suggest that it would be appropriate to just wait and see if any of this pans out, at which point they could sue for a refund, or even consider challenges in a concrete context. Do you rely on standing, or rightness, or both, with regard to the individual? Because of the uncertainty, there's no certainly impending injury. So the Supreme Court in Clapper described that as Article III standing, and it's correct. But I think lots of courts have recognized that it overlaps with rightness, when what you're talking about is not, you're the wrong person, but we don't know yet. The Secretary hasn't asked for any further tender of standing on the part of the individuals, I take it. Well, I mean, we haven't asked. We explained in our brief that this is speculative, and I did look to see in the reply brief, did they say, oh, no, I do have, you know, I'm now employed, there's income, you know, sufficient that I know I'll be... You're relying on counsel to... We don't have any firsthand knowledge, so yes, we would expect that counsel would have supplied additional information if, in fact, they thought it was certain that they would not qualify for any of these exemptions. It would be difficult to do because the hardship exemption is the subject of proposed rules that are not yet finalized. So, I think there's some inherent uncertainty in bringing a lawsuit here, you know, years and years before the provision took effect, and that contemplated implementation through rulemaking. Can I ask you, before you get further along, I just had some fact questions that I don't know the answer to, and one of them, is it possible for an employer to be subject to the employer mandate and the 4980 tax at the same time? When your honor says employer mandate, which U.S. code... The exaction, whatever... No, no, but I mean, we're talking about 4980H... Well, does 4980D overlap, or are they alternatives? Oh, oh, D, okay, they're different, and... I know they're different. Yes, no. But that doesn't go to whether they are alternatives or... Yes, yes, and I'm... There was a representation in the other brief, and I'm just not clear on what... The 4980D, which has actually been around since HIPAA in 1997, that is one consequence if a group health plan doesn't comply with various requirements of the Public Health Service Act and ERISA, so, I mean, just for example, can't discriminate on the basis of medical condition in enrolling... Right, okay. ...plan participants, all sorts of things, this is not something new, and there are different consequences. That one actually can be enforced by the Department of Labor, it can be enforced by HHS against insurers, and there can be... And it could be enforced in addition to the penalties under this statute, under the Health Care Act. Yes, it is... It really is completely distinct from the potential tax liability under 4980H, and that's just tax liability. There is no separate Department of Labor enforcement, or there's... There's no separate Affordable Care Act tax liability that an employer is potentially subject to if the employer either doesn't provide any health coverage to its full-time employees, in which case we're under subparagraph A, or if the coverage it offers doesn't meet the affordability criteria, and those are the subject of separate statutory provisions and rules. Well, and can I sort of ask you a follow-up question? If Liberty provides affordable health care to its full-time employees, but does not provide the level of coverage required by the Act, what are the consequences? When you say the Act, 4980H, if it provides full-time coverage to its full-time employees and their dependents, as a practical matter, and it's affordable, so it's a monetary thing, there should be no tax liability under 4980H. That doesn't mean it can't potentially have tax liability under 4980D. That's just a different inquiry, and it's not an issue in this case. And it can... What's not an issue? 4980D. Right, okay. Both because it's never been pled or addressed by any court or brought to the Supreme Court's attention or anything like that, but also because they don't... They're protected by the safe harbor right now. So there is no 4980D liability. The safe harbor, that is what it's doing. It's ensuring that the protected entities aren't accruing tax liability, aren't subject to Department of Labor enforcement, et cetera. So that's a totally independent reason that even if it had been pled, like in some of the other cases, that it would not be justiciable in this case. And can I ask you one last question? Of course. Does an individual obligated by the individual mandate to purchase insurance have the option of not having that insurance be covered, cover abortive... Whatever they... I'm just substituting our terms. Abortive patients. I just... This may sound trivial, but individual mandate, we're very strongly resisting that term because NFIB confirms... Okay. Well, whatever you want to call it. Right. I will give you the... Everyone has the lawful choice not to... We don't want people to think they have to buy it. We don't want to force them. Right. To require insurance that has that. Is that correct? So if they choose to buy coverage, there are various plans that don't have to provide contraceptive coverage. So yes, there will be options. Thank you. Okay. Thank you. Looking back now with the benefit of two plus years, did Liberty ever have standing in this case? No. With the benefit of... I have to admit, we did not focus on the challenge, the employer provision, because I think as we've sat out with the Supreme Court in here, the underlying challenges are clearly meritless, and so everyone's focus was on 5,000... You and Judge Davis are on a whole different level than I am. So spell out how they never had standing. I think the question should be, why didn't we hear about this when we filed our brief the last time? You interpreted it correct. What is your argument that they never had standing? Well, it's always been speculative whether... I'm just saying, how do we actually... And the Anti-Injunction Act, as the court correctly held, always barred Liberty's challenge. Well, they did. You're all correct in retrospect. But in the frenzy of briefing, everyone's attention was on 5,000A. I understand the AIA, but what is your other argument that Liberty never had standing? Never had standing to challenge anything in the Affordable Care Act? Well, the only provision they challenged was 49ADH, which is this one that we're discussing. And they say in the complaint, we offer health coverage to employees and their dependents. The way they set out their complaint. Somebody can make a Commerce Clause challenge, and somebody can make... Sure, sure. Just not Liberty, because as best we can tell from everything they've said in the complaint, they're fine. And the issue of affordability, it's got a bunch of if clauses in their brief. It's if we offer coverage that isn't affordable, and if an employee then goes to an exchange, and if the employee gets a premium. So it's just not the way courts normally adjudicate cases. So while I am happy to talk about the tax and power in the Commerce Clause... I think you better, because we all may not have as clear a picture on this as you and Judge Davis do. Okay. Well, with 49ADH, and I should make clear that Liberty is the only, as far as I know, the only plaintiff in the country that is even contending that Congress doesn't have the Article I power to impose tax liability on a large employer that fails to offer health coverage to its employees. I mean, it's been established for about 75 years that the Commerce power permits Congress to regulate the terms of the employment contract. That's true, but the Supreme Court's case, Supreme Court's opinion in the companion case to ours, puts a new light, it seems to me, on the Commerce Clause. We're talking about NFIB? We are. No, no. I mean, NFIB, to the extent we look to the opinions... That's a pretty big loss. But the whole argument was always individuals and inactivity. There was never any suggestion you couldn't... I mean, employers, as the District Court explained, that is commerce. They're in commerce. That's the... They are certainly in commerce, but there was some other language in NFIB that is not helpful to general going forward with the broad Commerce Clause argument that the government relied on for 50 years, as you said, or 100 years, or some number of years. I mean, we sound like we're in a new regime after NFIB. The court posed NFIB to address this, and because litigants have been popping up saying NFIB changed everything. No one has succeeded in any other context. And they certainly didn't call into question race. So we know that Congress can reach the consumption of homegrown marijuana. The idea of Congress, going back to HIPAA, has regulated the terms of employer group health plans, so you can't leave people out because of their medical condition or medical history. You can't charge them different premiums. This is all... This is their employer regulation of the compensation of employees. And no court has called that into question. The whole... I mean, I do know from the litigation in NFIB that the entire argument on the other side was, I'm an individual doing nothing, not I'm an employer engaged in commerce. No, no. I remember that argument. Right. Of course. And independently, the taxing power, Congress has long used its tax code power to encourage employers to provide health insurance to its employees, and it's done so again here by establishing tax liability for large employers that don't do so. Have I left anything out? Well, you want to talk about the taxing power? Are you just putting all your eggs in... That was my... I mean, just... I'm not sure what to say. Of course it's a tax. The Congress called it a tax. Unlike with 5000A, where there was at least... I mean... No, no. That's... Whether Congress called it a tax or not. That's correct. But the one case that the other side relies on, Drexel Furniture, there you had enforcement by the Department of Labor, a Sienta requirement, and a tax that was, you know, the employer had one child for one day, it owed 10% of its net income for the year. There's nothing like that here. And, of course, there are significant arguments made in the brief of the other side about how onerous this tax is, this provision is. And we've walked through to show that their calculations are off by orders of magnitude, but again, I want to go back to the point I opened with, which is this really only underscores why a court shouldn't in advance be addressing a challenge based on hypotheticals about how a tax might be calculated, particularly where the government is saying, no, you're wrong, it's not $34 million, it's $3,000. I mean, that's... So you're saying that that issue is not ripe, either. Exactly. I thought you were putting your eggs in the basket of the early abortion, whatever, that provision. I thought you were saying that wasn't ripe, but that these other claims were. That's also unripe for a different reason. Well, for this reason, too, I suppose. Right. But for a lot of reasons. I'm not... Contraception, unripe, and also not before the court, because it's never been in a case. 4980H, it's in the case, but the Anti-Injunction Act bars adjudication. Right. And independently... We should reject that argument, since I have to say the government has been flexible on its application of the Anti-Injunction Act. Well, actually, I went back and I reread what we said to the Supreme Court, and we quite clearly, and emphatically said, whereas under 4980H, it's labeled a tax, that's the end of the matter. And that's not saying the Supreme Court explicitly addressed that, but the Supreme Court, in saying 5000A isn't subject to the Anti-Injunction Act, it was adopting our argument when it said, because Congress called it a penalty, rather than a tax. So the Anti-Injunction Act, separately, 4980H, the challenge is premature, because we don't know whether Liberty will owe any tax under 4980H. So those are separate points. And the reason we don't know is because... Because of the complaint. Because 4980H, A, they seem to satisfy, because they offer health coverage to the full-time employees and their dependents, and B, all they say is, if our coverage is unaffordable. But that's also in their control, because the proposed regulations have various safe harbors, they can look at the W-2s of their employees, they can make sure that it's affordable. And again, none of this has taken effect yet. What about the individual employees who are still, or the individual people who are still in the case? Right, so separately, and you're correct that they are not employees of Liberty, they're just individuals. Right, and they are separate... Right. For them, in terms of the threshold, the Anti-Injunction Act does not apply, that, of course. However, their claims are, whether they're going to call it unripe, or they can't establish standing, because we, at least based on the complaint, it looks like they may qualify for a hardship exemption, or there are different terms for it. If their required premium contributions would be more than 8% of household income, they're exempt from everything, don't have to make the shared responsibility payment, if their income is below the filing threshold, or if they separately apply and get a hardship exemption. But don't they allege that they will be subject to this? No, to the contrary, they both, they're only two paragraphs, but they both allege that it would be a financial hardship, and one says she's unemployed. Right, I remember that. The other doesn't say anything. So, it's, just again, going off of the complaint, and the fact that in response to our brief, they didn't come back and say anything like, no, my circumstances have changed, I now have a job, or just anything. We have no, it's their burden to establish standing to challenge this provision. Okay, if you have another point or two, I'm trying to make the argument time equal, and your colleague has a rebuttal, so that he's adding up all the time he had. I believe the only point I have not yet addressed is that individuals also challenge the religious exemptions, but I just want, in 5000A, because there are certain categories, and I just want to point out that the Supreme Court in the United States versus Lee rejected a comparable challenge, it's actually to the Internal Revenue Code exemption that's cross-referenced in the Affordable Care Act, 5000A exemption, and also all of the courts of appeals to address the issue have said, no, that doesn't violate the Establishment Clause, and it's not a basis for extending it to other people who assert religious claims. Thank you very much. Thank you. Stay where you have some rebuttal time. Three minutes. If I may, I want to address liberty first in rebuttal, and then also the individual plaintiffs. Liberty, as it relates to liberty, will have to either pay a penalty or provide insurance, and under that insurance, there's two provisions. There's the essential coverage, which includes the preventative care, which is the abortifacients, and then there's affordability. If you don't have the affordability, it's a $3,000 per employee per violation, but if you don't have the essential coverage, whether it's preventative or anything else, just providing insurance generically doesn't give you a pass under this Act. If it doesn't meet the essential coverage, which includes the preventative care, the abortifacients, then liberty has to pay $2,000 per employee per year. So you're going back to the math that you gave us in your original brief. The government countered it with other math, and I read your reply brief as saying, well, the Maryland government might be right about the math, but we still are suffering. Only on the affordability. The government countered the affordability. But you talked about the affordability just now. Yeah, but the affordability, but there's two different penalties. You've got the affordability, and that's $3,000 per employee, however many number of employees are not affordable. But you came up with a multi-million dollar factor. Well, but the other one, Your Honor, is the essential coverage. That's a $13 to $14 million fine. And that has not been rebutted by the Department of the Administration, nor can they, because that penalty happens if liberty does not provide insurance. Well, the government says that you, in the complaint, have pled that you provide coverage that would qualify under the Affordable Care Act. The government is wrong with all due respect. The government cannot say... Or might. We don't know how this is going to play out. The government cannot say that just by providing coverage, you're not going to be under the act, and you're fine, there's no penalties. The act specifically requires that it has to include essential coverage. Essential coverage under 1302 requires preventative care, which is... Well, we don't know yet exactly what that means. Well, we do, because... Those regulations are still out there, right? But the regulations are to become final August 1. Well, regulations change. Well, but they can't keep having a mootness or a standing by constantly changing the regulations. Liberty University is a large employer. It has to provide a significant effort, which we're doing now, to be able to prepare for this. We can't just simply wait August 1 and say, are they going to come up with some new regulation? We know what the regulation is. Why can't you seek a preliminary injunction if, when the final regs come down, you find them objectionable? Because... What's so extraordinary about that, apart from the fact that an injunction is extraordinary? That's why we're here, in fact, because... No, you're here because a couple years ago you challenged the facial validity of the act. When this wasn't part of the act at all. And we're asking for the preliminary injunction because Liberty has had to go through efforts to get to this point, and those efforts are now closing. The hammer is about ready to fall on Liberty. And we have very little window right now because we're closer to the actual implementation and to the penalties that Liberty will ultimately incur. Well, look, I for one don't fault you at all for bringing to the Supreme Court's attention that, frankly, the good justices had overlooked aspects of this case in summarily denying cert. So I don't fault you at all for that. But this case is very different from the case you filed a couple of years ago, and it's very different from the challenge you are likely to mount after August 1 or September 1 or November 1, whenever those regs come down. And I'm not sure we should jump into the breach. Well, just two responses on that. Liberty's challenge is the same regarding the employer mandate. As it relates to the preventative care of the abortifacient, I think it's still going to be the same. As it relates, however, to the individuals, it's still the same. And the administration says that the individuals can have a coverage that doesn't include abortifacients. That's not true. Every plan, everyone across the board, no matter where you get it, has to include abortifacients. They can elect a plan that does not. And you say that it does. But we don't have a district court making a finding of fact. That's not our job. This is actually part of the act in terms of what's required, is preventative coverage. And the mandate says, and there's no option out, that all plans, the only question under the mandate, the preventative care slash abortifacient mandate is whether or not certain religious employers will be exempt. But every plan across the board, and that will not be exempt from providing. I understood your colleague to say that the preventative care definition was up for grabs. That's not true? That's not true. No, the preventative care is part of this act. The HHS mandate said through the IOM and now came out and said preventative care includes this, contraception, these abortifacients that we're objecting to. Every plan will have that. I directly asked her if an individual could choose a plan that does not have an abortifacient thing in it, a provision in it. And she said yes. And so you're representing to us the answer to that is no? That's correct. They could choose a plan, perhaps, that doesn't cover. Well, then your answer is maybe. No, no, no. They can't get out of the abortifacients. It's either abortifacient or surgical abortion. There's nothing in between. There's no plan that doesn't cover one or both of those. Every plan will cover, no matter who provides it, abortifacients. The individuals cannot get out. And what provision do you rely on that says that? Well, that's 1302 in the act, and that's also part of the essential coverage, and also under 5000, which is the individual mandate. And then the HHS mandate came out clearly and said that preventative care includes enlisted. But 1302 deals with exchanges, right? Well, I'm sorry. Exclusively. The 5000 speaks of what's supposed to be in the plans, and it's part of this preventative care, which they use the term preventative care. The HHS mandate says all plans have to include these abortifacients, contraception, sterilization, these morning-after pills, and IUDs, all plans. And the only issue— You know, this is the first time, if you're right, it's the first time I've had somebody from the federal government misrepresent something to me in open court in response to a direct question. I'm not impugning anything regarding— Well, you may not be, but I would certainly be— But I'm saying— Unhappy about that. This—all plans will cover that, everyone. So when the individuals choose to get insurance—and by the way, Michelle Waddell is a law school graduate now and is employed. But when they choose— Wow. Which in this market is a good thing. Law school graduate and employed? Amazing, isn't it? But, Judge Motz, when they choose to go into the insurance market for health coverage, they have no choice. All plans will have the abortifacient. The only issue that's in these HHS mandates is this. Which employers will not have to pay directly for it? If you're insured by an insurance company, then the mandate or the regulations say, then the insurance company will have to pay for it and the employer doesn't have to directly pay. Okay. I've got your basis for saying this. Now I want to hear what the federal government's basis for saying to the contrary is. Okay. If there is one. Thank you very much. Thank you. Do you understand the question? Yeah, I understand the question, so I'm going to give two answers. If we're talking about contraceptive coverage, including what they refer to as abortifacients, by which they mean IUDs, Plan B, and Ella, grandfathered plans are not required to abide by the Preventive Health Services coverage requirement. I'm really asking a really simple question. Yes. So is every individual in the country allowed to get some plan that does not have abortifacients in it? And whether it's a grandfathered plan or some other, but the grandfathered plan has to be available to the person. Correct. So, okay, so millions of people are in grandfathered plans, in which case their plans do not have to cover contraceptives, what they're calling abortifacients. Separately, if we're using the term abortion the way it was used in the complaint and in federal law, plans sold. That's not what I was asking you. I'm asking you about abortifacients. All right. Are individuals mandated to buy a policy that covers that coverage? If they're in a grandfathered plan, it doesn't have to provide it. And separately, if they don't, if they're, imagine they don't have access otherwise to a plan that's to their choosing, they don't have to buy coverage at all. They can take the shared responsibility payment. So some individuals are required to buy insurance that has abortifacient coverage. No one is required to buy insurance. Except, unless they want to pay the tax, or the fee, the penalty. Yes. So under NFIB, and if this is the easiest way to address it, this will be our simple answer. No one has to buy insurance. I hadn't understood what you're saying now as your original answer. The reason I said, because in the real contraceptive coverage litigation, the existence of these grandfathered plans is looming as very significant, and the emphasis on how millions and millions of women are in grandfathered plans. But they don't include abortifacients, according to you? They are not required to include what they're calling abortifacients. The plans are not required. That's a little different than, is the employer, is the employee required to buy a plan that does have abortifacients in it? I'll just go back to the basic point. No one is required to buy insurance. Because they can pay the alternate fee, is your position? Correct. Okay, we will come down and greet the lawyers, and then I think we'll take a brief recess.
judges: Diana Gribbon Motz, Andre M. Davis, James A. Wynn, Jr.